BANK LEUMI–LE–ISRAEL, B. M.,
PHILADELPHIA BRANCH,
Plaintiff,

v.

SUNBELT INDUSTRIES, INC., Telfair
Farm Center, Inc. and J. W.
Griggs, Defendants.

Civ. A. No. 380–06.

United States District Court,
S. D. Georgia,
Dublin Division.

March 18, 1980.

Frank B. Wilensky, Sheldon R. Wittner, Macey & Zusmann, Atlanta, Ga., for plaintiff.

E. Herman Warnock, McRae, Ga., for defendants.

## ORDER ON PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

BOWEN, District Judge.

The plaintiff, Bank Leumi-Le-Israel, B.M., Philadelphia Branch [Bank Leumi], filed a suit against the defendants, Sunbelt Industries, Inc. [Sunbelt], Telfair Farm Center, Inc. [Telfair] and J. W. Griggs, seeking multiple forms of legal and equitable relief. Among the prayers in the complaint were those seeking injunctive relief and the appointment of a receiver. Prior to the filing of any responsive pleadings, but after service of the complaint upon the defendants, the Court conducted a hearing on the application for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) in Augusta, Georgia, on March 12, 1980. At the outset, counsel for the plaintiff announced that it sought only the injunctive relief, temporarily abandoning its application for the appointment of a receiver.

There is little in financial fiction which is stranger than the truth presented in this unfortunate series of financial transactions. It is clear that the plaintiff and the defendant Telfair have suffered injury. However, it is not clear that Bank Leumi's stunning losses were caused solely and directly by the conduct or misdeeds of Telfair and Griggs.

This was only a hearing on a preliminary injunction. There have been no responsive pleadings. There has been no discovery. Other parties may be added. Final findings of fact cannot be entered at this time, but according to the evidence adduced at the day-long hearing, here is what happened.

J. W. Griggs of Telfair County, Georgia, is the principal of Telfair. Telfair is a feed and farm supply outlet in Helena, Georgia. Telfair and Griggs sold large quantities of chicken feed, and at one time, they owned over 200,000 laying hens. In his business, Mr. Griggs came to know Julius Tauber who also owned laying hens. At some point, Griggs and Telfair sold their birds to Tauber. The problem began with this sale.

Tauber gave Griggs and Telfair a note, or at least the sale was on credit. Griggs and Tauber began to talk about going in business together to sell eggs, chicken feed, and other types of feed and farm supplies. There was some discussion that Tauber would become involved with Telfair, but that was discarded. It was decided that a new corporation, Sunbelt, would be organized. These discussions were never quite finalized.

Griggs and Tauber decided to capitalize the new corporation (Sunbelt) with $100,000.00. Tauber was temporarily short of cash so Griggs and Telfair put up a total of $95,000.00 to capitalize the corporation. Tauber was to obtain the financing for the new operation. He was handling that "up north." Griggs met Tauber in New Jersey on August 20, 1979. There, Griggs signed several papers in blank. Among those papers were two promissory notes, a security agreement, a corporate resolution, and an unlimited guaranty, all on forms of the Bank Leumi.

In arranging financing for Sunbelt, Tauber contacted a Mr. Feldman with the Bank Leumi in Philadelphia. He talked to Mr. Feldman by telephone and explained that he wanted to borrow $300,000.00 for the Sunbelt operation. This was the first financial transaction which Tauber had taken to Bank Leumi or Feldman. It must have been impressive. Mr. Feldman received from Tauber a "pro forma" balance sheet on Sunbelt, and got verbal committee approval on the $300,000.00 loan. It was to be made under two separate promissory notes in the respective amounts of $125,000.00 and $175,000.00.

On August 21, 1979, Tauber took all of the forms that Griggs had signed on the preceding day to Feldman and the loan was funded. An account was opened by Sunbelt with the Bank Leumi on that day. Somehow, Tauber had gotten hold of a list and appraisal of all of the "fixed assets" of Telfair. He gave that to Feldman. Feldman and Bank Leumi intended to make a loan to Sunbelt which was secured by tangi-

ble personal property known generally as "equipment." Feldman assumed that much of this was included in the appraisal of Telfair's property.

In fact, it appears that Bank Leumi took a security agreement which purports to convey to the lender all of the property of Sunbelt (which may well be nothing). It appears that nothing was ever transferred to Sunbelt except some accounts receivable and, of course, its $100,000.00 capitalization. Within the first few days of its opening the bank account at Bank Leumi, Sunbelt deposited $490,000.00. Three hundred thousand dollars of this came from the bank's own loan.

One can only assume that since Feldman had never met Griggs, no UCC–1 financing statements were recorded by the bank, and no certificate, affidavit, or appraisal of any collateral security was ever given to the bank, the loan was on the basis of great confidence in Tauber's financial strength and ability to pay.

The rest of the story is disappointing but not at all surprising. Predictably, the money is no longer in Sunbelt's account with Bank Leumi ($101,000.00 went to one of Telfair's creditors). In fact, bank overdrafts started appearing on the October bank statements and were frequent thereafter. The honeymoon between this bank and the Tauber-Sunbelt interests was brief indeed.

Even while portents of problems appeared daily by overdrafts in the Sunbelt checking account, Bank Leumi's faith in its new customer held fast. Indeed, it was so strong that the Bank Leumi, together with a correspondent or affiliate, made another loan to Tauber for unrelated purposes in the amount of $3,000,000.00. Thus, if generally recognized unscientific proportions of such things are accepted for descriptive purposes, the $300,000.00 loan to Sunbelt is only the tip of Tauber's iceberg.

J. W. Griggs, principal of Telfair, is apparently bound to Bank Leumi under the promissory notes, the corporate resolution, and his unlimited guaranty. There is no direct link between Telfair and Bank Leumi. The only link which could exist between Telfair and Bank Leumi is the bank's somewhat fanciful assumption that the assets of Telfair had been transferred to Sunbelt, that Sunbelt was the owner of the assumed assets free and clear of liens, and that the attachment of its security interests was complete and sufficient without the need of perfection thereof by the filing of a financing statement. This link, at this point in the case, is too weak and ephemeral to provide the basis for the type of relief the plaintiff seeks. It is speculative of the outcome of litigation which, it appears, will be protracted. Presently, it seems that Bank Leumi is an unsecured creditor with respect to Griggs and Tauber, and a secured creditor of Sunbelt to the extent that its assets, some accounts receivable and contract rights, have value.

Unfortunately, it appears that Mr. Griggs and Telfair are again in the process of negotiating a sale of the Telfair assets. With wonderful consistency, Mr. Griggs has permitted the prospective purchaser to enter upon the premises, take possession, and assume control of the Telfair business prior to paying anything or closing the deal. This should give cause for concern not only to Bank Leumi, but to the other creditors of Griggs and Telfair. They have substantial claims, both secured and unsecured. To ice the creditors' cupcake a little further, we find that the Tauber interests are in the beginning throes of a Chapter XI bankruptcy proceeding now pending in another district.

Mr. Griggs and Telfair have some assets of substantial value. Mr. Griggs testifies that he is solvent but cannot say why. Telfair may or may not be solvent depending on the value of some of its assets, including accounts receivable against Tauber or his corporations.

Under the evidence adduced at the hearing on the application for preliminary injunction, this district judge would be far more inclined to appoint a receiver to take possession of and protect the assets of Telfair, Sunbelt and Griggs for the benefit of all of their creditors. But, plaintiff seeks only injunctive relief.

■ By operation of law, a fiduciary relationship does exist. *See Super Valu Stores, Inc. v. First National Bank of Columbus,* 463 F.Supp. 1183 (M.D.Ga.1979). In the case of an insolvent corporation, the directors and officers stand as trustees of corporate properties for the benefit of creditors first and stockholders second. Mr. Griggs and any other directors of Telfair occupy this position of trust. As to Sunbelt, Mr. Griggs testifies that he has never received any stock and it is unknown whether this corporation was ever finally organized and whether there are directors other than the original incorporators. Nonetheless, by this order, the Court places Mr. Griggs on notice of his fiduciary obligations.

■ The grant or denial of a preliminary injunction lies within the sound discretion of the district court. *See Compact Van Equipment Co. v. Legget & Platt, Inc.,* 566 F.2d 952 (5th Cir. 1978). In exercising this discretion, the Court is mindful "that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 573 (5th Cir. 1974). The burden is met only upon the satisfaction of four criteria:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Id.* at 572. Based upon the foregoing findings of fact, I cannot conclude that these criteria are fulfilled.

■ Bank Leumi has not shown unequivocally that it is anymore than an unsecured creditor of Mr. Griggs. It has established no relationship to Telfair. There is a substantial question as to whether the equity jurisdiction of this Court has been invoked. The plaintiff has not firmly established the inadequacy of its remedies at law. There is

a paucity of proof about the current financial condition of Telfair, and little more about Sunbelt and Griggs. The mere showing of an unsecured debtor-creditor relationship and the likelihood of loss is not sufficient to warrant the issuance of an "extraordinary and drastic remedy." Bank Leumi has undoubtedly made out a case of a reasonable cause for concern as to the ultimate repayment of its loans. Bank Leumi sees losses looming on a not too distant horizon, and the Court is not unsympathetic to this probability. The cause of the problem that now approaches Bank Leumi is grounded more in its naiveté than in the cupidity of these defendants. Proof of ingenuousness on the part of the plaintiff does not ameliorate its case for equitable relief. Accordingly, the application for a preliminary injunction must be denied.

There exist in this action questions of fact and seriously conflicting evidence. These do not support a balancing of the equities in favor of the plaintiff. In contrast to the preliminary injunction hearing, the case warrants thorough preparation and an unhurried presentation characteristic of a trial on the merits.